OPINION
{¶ 1} Defendant-appellant, Edward Mayrides, appeals from a judgment of the Franklin County Court of Common Pleas, dismissing his petition for post-conviction relief without a hearing.
 {¶ 2} The following facts are drawn primarily from the findings of fact rendered by the trial court in its decision denying appellant's petition. On April 13, 1984, appellant was indicted on three counts of rape and two counts of kidnapping. Following his indictment, appellant's brother and father hired an investigator, Gene Laws, to investigate the allegations. In December 1984, Laws contacted an Assistant Prosecuting Attorney, Tim Merkle, and informed him that he had information regarding appellant that would be of interest to the state. Merkle gave Laws' telephone number to then Assistant Prosecuting Attorney Daniel Hogan, who had been assigned to appellant's case.
 {¶ 3} Hogan contacted Laws, and Laws stated that appellant's father had employed him to perform investigative work. At Laws' request, a subpoena was issued for the investigative file, and it was subsequently turned over to the prosecutor. The trial court and defense counsel were advised that the state was in possession of the file, and that the state intended to use alleged admissions made by appellant.
 {¶ 4} The trial court conducted a pre-trial hearing to determine the manner in which the state obtained the file, and whether information in the file could be used at trial. The hearing began on February 8, 1985, and took place over five days. At the conclusion of the hearing, the trial court ruled that any communications between appellant and the investigator occurring after April 17, 1984 were privileged. At that point, the prosecuting attorney represented to the court that he would not call Laws to testify because the alleged admissions had been made after that date. The prosecuting attorney further represented that he would not use information based upon anything he had learned from the investigator's file, and he made assurances that the entire investigative file would be available for review by defense counsel.
 {¶ 5} Prior to trial, defense counsel filed a number of motions, including motions to suppress, a motion to dismiss the indictment, and motions in limine. The trial court overruled appellant's motions to suppress a search and to suppress identification. The trial court also overruled appellant's motion in limine to preclude similar-act testimony arising out of a 1981 case in which appellant had been charged with rape. In the 1981 case, appellant had entered a guilty plea to a reduced charge of attempted gross sexual imposition, and he received a six-month sentence.
 {¶ 6} At trial, Laws was not called to testify. Following the presentation of evidence, the jury returned verdicts finding appellant guilty on all counts. Appellant filed a direct appeal of his conviction, asserting the following three assignments of error: (1) the court erred in failing to dismiss the indictment because an investigator for appellant who was present during attorney-client discussions was permitted to become a voluntary agent for the state; (2) the court erred by permitting evidence of similar acts for the purpose of establishing identification to rebut appellant's alibi; and (3) appellant was denied the right to a fair trial due to the cumulative effect of numerous prejudicial rulings. Further, appellant, on his own, assigned as error that his conviction was against the manifest weight of the evidence and that he was denied effective assistance of counsel. By decision rendered on June 30, 1986, this court overruled all of appellant's assignments of error and affirmed the judgment of the trial court. State v. Mayrides (June 30, 1986), Franklin App. No. 85AP-792 ("Mayrides I").
 {¶ 7} On September 20, 1996, appellant filed a petition to vacate or set aside his conviction pursuant to R.C. 2953.21. On October 30, 1996, the state filed a memorandum contra appellant's request for post-conviction relief. By decision and entry filed on April 22, 1997, the trial court dismissed appellant's petition without a hearing.
 {¶ 8} Appellant filed an appeal from the trial court's dismissal of the petition. In State v. Mayrides (Feb. 17, 1998), Franklin App. No. 97APA05-689, this court reversed the decision of the trial court and remanded for further proceedings, finding, in part, "[t]he facts set forth by the trial court in its decision and entry are not specific enough to permit meaningful review." The trial court issued a new decision and entry on March 14, 2003, again dismissing appellant's petition.
 {¶ 9} On appeal, appellant has set forth the following statement of "assignment of error one" for review:
(a) The trial court commits prejudicial error in ruling on a post-conviction petition, in failing to adequately detail findings of fact and conclusions of law.
(b) The court further errs in failing to either order discovery, or hold an evidentiary hearing on issues regarding whether petitioner received a fair trial, under the fourth, fifth, sixth and fourteenth amendments to the constitution.
 {¶ 10} In State v. Campbell, Franklin App. No. 03AP-147, 2003-Ohio-6305, at ¶ 13-17, this court comprehensively discussed the general rules regarding post-conviction proceedings as follows:
The post-conviction relief process is a collateral civil attack on a criminal judgment, not an appeal of the judgment. * * * "It is a means to reach constitutional issues which would otherwise be impossible to reach because the evidence supporting those issues is not contained" in the trial court record. * * * Post-conviction review is not a constitutional right but, rather, is a narrow remedy which affords a petitioner no rights beyond those granted by statute. * * * A post-conviction relief petition does not provide a petitioner a second opportunity to litigate his or her conviction. * * *
A defendant seeking to challenge a conviction or sentence through a petition for post-conviction relief under R.C. 2953.21
is not automatically entitled to a hearing. * * * In reviewing whether the trial court errs in denying a petitioner's motion for post-conviction relief without a hearing, the appellate court applies an abuse of discretion standard. * * *
To warrant an evidentiary hearing on a petition for post-conviction relief, a petitioner bears the initial burden of providing evidence that demonstrates a cognizable claim of constitutional error. * * * [A] trial court has a statutorily imposed duty to ensure a defendant presents evidence sufficient to warrant a hearing. The evidence must show "there was such a denial or infringement of the person's rights as to render the judgment void or voidable under the Ohio Constitution or the Constitution of the United States." * * * Pursuant to R.C.2953.21(C), a defendant's petition for post-conviction relief may be denied by a trial court without holding an evidentiary hearing where the petition, the supporting affidavits, the documentary evidence, the files, and the records do not demonstrate that the petitioner set forth sufficient operative facts to establish substantive grounds for relief. * * *
A trial court may also dismiss a petition for post-conviction relief without holding an evidentiary hearing when the claims raised in the petition are barred by the doctrine of res judicata. * * * "Res judicata is applicable in all postconviction relief proceedings." * * * Under the doctrine of res judicata, a defendant who was represented by counsel is barred from raising an issue in a petition for post-conviction relief if defendant raised or could have raised the issue at trial or on direct appeal. * * *
For a defendant to avoid dismissal of the petition by operation of res judicata, the evidence supporting the claims in the petition must be competent, relevant, and material evidence outside the trial court record, and it must not be evidence that existed or was available for use at the time of trial. * * *
(Citations omitted.)
 {¶ 11} In his petition for post-conviction relief, appellant raised nine claims and, on appeal, he challenges the trial court's dismissal of most of those claims, which we will address in order. In his first claim for relief, appellant argued that his counsel was ineffective in failing to protect him from the "taint" of intrusion into the attorney-client privilege when the state issued an ex parte subpoena for privileged information and files from the defense investigator, Gene Laws.
 {¶ 12} To prevail on a claim of ineffective assistance of counsel, a post-conviction petitioner is required to demonstrate: "(1) that counsel's performance fell below an objective standard of reasonableness, and (2) that counsel's deficient performance prejudiced him." State v. Anderson, Hamilton App. No. C-030382, 2004-Ohio-866, at ¶ 15. In order to demonstrate prejudice, a petitioner must show that "counsel's deficient performance `so undermined the proper functioning of the adversarial process that the trial could not have reliably produced a just result.'" Id., quoting State v. Powell (1993), 90 Ohio App.3d 260, 266. A petitioner seeking to obtain a hearing on an ineffective assistance of counsel claim in a petition for post-conviction relief "bears the initial burden of submitting evidentiary documents that together contain sufficient operative facts which, if believed, would establish defense counsel had substantially violated at least one of a defense attorney's essential duties to his client, and the defendant was prejudiced as a result."Campbell, supra, at ¶ 24.
 {¶ 13} On appeal, appellant cites to an investigative letter from Laws to appellant's then attorney, detailing conversations Laws had with appellant. Appellant, noting that Laws delivered this file and information to the assistant prosecutor following the prosecutor's issuance of a subpoena, asserts that trial counsel was ineffective in failing to recognize the importance of contesting the subpoena and, thus, protecting appellant's constitutional rights. Appellant argues that ineffective assistance of counsel is further shown by the fact that counsel either failed to review the file that had been provided by the prosecutor, or counsel failed to recognize that the attorney-client privilege was protected from the very beginning in this case.
 {¶ 14} The record indicates that, at a pre-trial hearing, defense counsel raised the issue whether the subject information was privileged. During the proceedings, the parties stipulated that Laws had informed the prosecutor he contacted the Ohio Department of Commerce, and that the prosecutor subsequently subpoenaed the files. Defense counsel requested a stipulation that the subpoena was "run through, basically, an ex parte process, and at no time did the defense have an opportunity to move to quash that subpoena." (Tr. 443.) The prosecutor responded that, to the best of his knowledge, "the subpoena was done the same way every other subpoena in our office is done." (Tr. 444.) Defense counsel then requested a further stipulation that the subpoena was issued without a court determination as to whether it was proper, and that defense counsel was not provided notice that "this was taking place." (Tr. 444.) The prosecutor agreed to the stipulation.
 {¶ 15} Following the presentation of evidence at the pre-trial hearing, the trial court concluded that appellant had a reasonable expectation that, "from at least April the 16th or 17th and on, Laws was working for the defense, was an agent of [defense counsel Sean] Maxfield. * * * Any time prior to that, I am finding that any communication between Laws and this defendant was not privileged." (Tr. 475.) Thus, the court informed the prosecutor that any conversations between Laws and the prosecution after April 17 could not be used. In response, the prosecutor stated: "I would say we can wash our hands of the whole issue because I don't think I gained a whole lot by putting Laws on the witness stand and having him testify about this much without telling the rest." (Tr. 476.) The prosecutor further assured defense counsel, "I will attempt to do my best not to question anybody about anything I learned from Laws, period. And if I appear to be transgressing, you can object and it would be — we can deal with that at that time." (Tr. 477.) Defense counsel then requested that he be provided the opportunity to review the file. The prosecutor indicated he would have "no problem showing him the entire thing." (Tr. 477.)
 {¶ 16} In addressing appellant's argument in his petition for post-conviction relief that the subpoena duces tecum issued by the prosecution for the investigator's file violated R.C. 4749.13
and Crim.R. 17, the trial court noted the fact that the record of the pre-trial hearing revealed that defense counsel was aware of the manner in which the prosecutor obtained the records, and that counsel took issue with the prosecutor for issuing an "ex parte" subpoena. Thus, the trial court concluded, any violation of the statute or criminal rule was part of the record and could have been raised on direct appeal. We agree that the record indicates the factual basis of this claim was reasonably available to appellant at the time of both the trial and direct appeal and, therefore, the claim is barred by the doctrine of res judicata. See State v. Perry (1967), 10 Ohio St.2d 175, 180 ("[u]nder the doctrine of res judicata, a final judgment of conviction bars the convicted defendant from raising and litigating in any proceeding, except an appeal from that judgment, any defense or any claimed lack of due process that was raised or could have been raised by the defendant at the trial which resulted in that judgment of conviction or on an appeal from that judgment").
 {¶ 17} In attempting to show prejudice from the prosecution's subpoena of the file, appellant asserts that the prosecutor used information obtained from the investigator's files at trial. Specifically, in his petition before the trial court, appellant noted that he was questioned about a prior drug conviction during the pre-trial hearing. However, as noted by the trial court, while such testimony occurred during the pre-trial hearing, no questions about a prior drug conviction were introduced at trial and, therefore, appellant has not demonstrated prejudice.
 {¶ 18} Appellant also argued in his petition that questions he was asked at trial by the prosecutor about a weapon used in connection with a prior criminal case could only have been obtained by information in the file. The trial court found this argument unpersuasive, noting that the prosecutor questioned appellant about the weapon based upon transcripts from the prior trials in the 1981 case, and that this information was accessible before the investigator turned over his file. The record supports the trial court's findings on this issue.
 {¶ 19} Appellant also argued in his petition that, although one of the victims testified at trial that she noticed Marlboro cigarettes in her assailant's vehicle, he and his wife had told the investigator that he smoked "Merit" cigarettes. Appellant contended the prosecutor's knowledge that he smoked a particular brand of cigarettes might have prompted the police not to disclose the contents of the ashtray in appellant's car following a search.
 {¶ 20} The trial court rejected this claim, noting that the items taken from the vehicle were revealed; specifically, appellant was arrested on April 5, 1984, at which time the vehicle was impounded and the police obtained a consent to search. The vehicle was searched that day, and a property slip identifying items taken from the vehicle was prepared. Further, these events all took place prior to the time the prosecution obtained the investigator's file. Upon review, we agree with the trial court that the sequence of events negates appellant's suggestion that police officers may have failed to disclose the contents of the ashtray.
 {¶ 21} Here, other than general allegations set forth in the affidavits of appellant and his wife, appellant has failed to offer "genuinely significant" evidence outside the record to support his contention that the prosecutor used information from the investigative files at trial, or that the police may have withheld exculpatory evidence, and the self-serving affidavits submitted by appellant are not, "as a matter of law, sufficient to trigger a hearing." State v. Steffen (May 11, 1994), Hamilton App. No. C-930351. See, also, State v. Bragenzer,
Pickaway App. No. 03CA1, 2003-Ohio-5597, at ¶ 15 (in petition for post-conviction relief, "[e]vidence outside the record in the form of a petitioner's own self-serving affidavit will not compel the trial court to hold a hearing").
 {¶ 22} Based upon the foregoing, the trial court did not err in dismissing appellant's first claim for relief.
 {¶ 23} In his second claim for relief, appellant argued that his counsel was ineffective for failing to elicit the assistance of an expert regarding the suggestiveness, accuracy and reliability of the identifications by the victims. Appellant maintains that the affidavit of an expert attached to the petition states at length the reasons why misidentification occurred. Appellant also argued that his counsel was ineffective in failing to: (1) raise the issue of a "lobby viewing" during his trial; (2) dispute the absence of a photograph from the photo array; and (3) challenge the fact that appellant's appearance, including hair length, was not consistent with one of the victim's descriptions.
 {¶ 24} In support of his second claim, appellant submitted with his petition the affidavit of a psychologist, Hollida Wakefield, who stated that appellant would have benefited from expert testimony regarding identification evidence. The trial court, however, found no evidence that Wakefield was a legal expert or that she was qualified to render an opinion concerning the issue of effective assistance of counsel. The court also concluded that issues regarding identification could have been raised on direct appeal because they were evident from the record.
 {¶ 25} Generally, "[t]he decision to forego an eyewitness-identification expert is a recognized trial strategy."State v. Keeling, Hamilton App. No. C-010610, 2002-Ohio-3299, at ¶ 8. See, also, State v. Fisk, Summit App. No. 21196, 2003-Ohio-3149, at ¶ 9 (attorney's decision not to request appointment of an expert witness to testify on a particular issue is a matter of trial strategy and does not establish ineffective assistance of counsel).
 {¶ 26} Here, even assuming some of the concerns expressed by the psychologist in her affidavit regarding the identification procedures to be valid, appellant has not shown that his counsel had no objectively reasonable basis for failing to retain an eyewitness-identification expert. A review of the record in the instant case indicates that trial counsel thoroughly cross-examined the witnesses regarding their identification of appellant, and appellant has not demonstrated that the failure to retain an expert resulted in prejudice. See Jones v. Smith
(C.A. 11, 1985), 772 F.2d 668, 674 (no prejudice resulted from lack of expert testimony where the likelihood of mistaken identification was brought to jury's attention through cross-examination).
 {¶ 27} The record contradicts appellant's contention that his trial counsel was ineffective for failing to raise the issue of a "lobby viewing" at his trial. Specifically, during the cross-examination of one of the victims, trial counsel questioned the witness whether she had engaged in "any conversations with anybody out in the hallway about whether or not that's him or not?" (Tr. 122.) The witness acknowledged she had spoken with someone in the hallway. Trial counsel asked the witness whether she had told this individual she was "not sure" whether appellant was the individual who raped her; the witness responded to counsel, "[n]o, I did not." (Tr. 123.)
 {¶ 28} Appellant also argues that his counsel was ineffective in failing to raise the issue of whether the state replaced a photograph (No. 6) in an array shown to victim Melissa Pelow (on April 4, 1984) with another photograph presented at trial; however, there is no supporting evidence to show the state replaced the photograph. As noted by the state, Pelow did not testify that a photograph of a different individual was in the array shown to her at trial; rather, she testified that, when she was first shown photograph No. 6, she thought the individual had glasses. She explained at trial that she was mistaken about the glasses. Further, we agree with the trial court that the photographic arrays constituted evidence in existence at trial and, thus, this issue could have been raised on direct appeal. Similarly, appellant's contention that his counsel was ineffective in failing to elicit evidence that he did not have shoulder-length hair in February 1984 could have been raised on direct appeal and, therefore, is barred by the doctrine of res judicata. Finally, as noted by the trial court, this court previously determined, in appellant's appeal from his conviction, that there was "no evidence in the record" showing that appellant's trial counsel's performance was deficient. MayridesI, supra.
 {¶ 29} Accordingly, the trial court's dismissal of appellant's second claim for relief was appropriate.
 {¶ 30} In his third claim for relief, appellant asserted that the state failed to disclose the following: (1) a police report containing information that the "similar act" victim was approached by an assailant driving a green vehicle; (2) photograph No. 6 from the original photo array; (3) the tape-recorded interrogation of appellant; and (4) the fruits of the search of appellant's automobile.
 {¶ 31} Regarding appellant's claim that the prosecution failed to disclose a police report, we note that, during the trial of this matter, the state introduced evidence of a rape committed several years prior to the incidents at issue. Specifically, the state presented the testimony of the victim, Jane Theis, as similar-act testimony. Appellant argues that there was information in a police report that this victim was approached by an assailant driving a green vehicle and, had the defense known of a green car, it would have used this information to impeach the credibility of the "similar act" victim.
 {¶ 32} However, we agree with the trial court that there is no evidence to show that the prosecution did not disclose the report at issue. Further, the record supports the trial court's findings that the report indicates that the witness described the vehicle as "possibly green," and the cross-examination of the witness indicates she was not paying attention to the vehicle. Specifically, the witness stated that she could "not [describe the vehicle] at all." (Tr. 389.) The trial court further noted that it was undisputed that appellant was driving a blue car at the time of his arrest in 1981, and that the car at issue in 1984 was also blue. In the absence of any evidence that the report was deliberately withheld, we find no merit to appellant's claim.
 {¶ 33} We have previously addressed and rejected appellant's unsupported claim that the state failed to disclose a photo from the array that was shown to both victims. Further, we agree with the trial court that the reliability of the identifications, the suggestiveness of the arrays, and the fact that some photos varied in size, were issues that were either raised or could have been raised at both the hearing on the motion to suppress and on direct appeal to this court. Accordingly, this matter is barred by the doctrine of res judicata.
 {¶ 34} Appellant's contention that the state failed to disclose tape-recorded interrogatories of appellant conducted by Detectives James Delfino and James L. Straight is without merit. In his petition before the trial court, appellant argued that page 22 of an attachment reflected notations taken during the taped conversation; however, page 22 of a "supplemental progress" note, containing the notation "on tape," pertains to an interview of a "James Anderson" and his wife. Detective Straight testified at trial that he did not recall that any statements made by appellant were tape-recorded. The trial court concluded that it was not required to infer that a tape existed merely because a handwritten notation on a summary of another witness interview stated "on tape." We agree, and find that, apart from appellant's unsupported allegation, there is no evidence to suggest an interview tape of appellant ever existed. Moreover, appellant's affidavit fails to set forth any valid rationale that would render the tape favorable to him. We therefore find no error by the trial court in failing to conduct a hearing based on this claim.
 {¶ 35} Finally, appellant again argues there was evidence that the prosecution failed to disclose items seized from his car. Specifically, appellant argues that, when his vehicle was returned to his wife, it appeared that the ashtray had been swept, the floor had been vacuumed, and miscellaneous items had been removed. In his petition, appellant expressed his belief that the missing contents of the ashtray and sweepings would have contained exculpatory evidence, confirming that he smoked "Merit" cigarettes rather than Marlboro cigarettes (as indicated by one of the victims). In support, appellant offered the affidavit of his wife, who stated that, prior to trial, she told Gene Laws and an attorney that their vehicle "appeared" to have been vacuumed and swept out, and that the contents of the ashtray were missing.
 {¶ 36} Despite the assertion made by appellant's wife in her affidavit, the record indicates that, during her testimony at the hearing on the suppression motion, she presented no testimony regarding the ashtray being swept. Further, there was extensive testimony at trial that appellant smoked "Merit" cigarettes, including the testimony of appellant and his wife. Moreover, the trial court properly concluded that this issue could have been raised on direct appeal and was, therefore, barred by the doctrine of res judicata.
 {¶ 37} Based upon the foregoing, the trial court did not err in dismissing appellant's third claim for relief.
 {¶ 38} In his fourth claim for relief, appellant argued that the trial court erred in permitting Detective Delfino to read his summary investigative report to the jury, and that his trial counsel was ineffective in failing to file a motion for new trial. Appellant also contended that his appellate counsel was ineffective for failing to raise this issue on appeal.
 {¶ 39} The record indicates that trial counsel "strenuously object[ed]" to the detective reading from the summary report at trial. (Tr. 322.) The trial court overruled the objection on the basis that the prosecution had the right to rehabilitate the witness after defense counsel had earlier questioned the witness regarding a portion of the summary.
 {¶ 40} In addressing this claim, the trial court properly concluded that this matter could have been raised on direct appeal. The trial court also properly denied appellant's claim for ineffective assistance of appellate counsel, as such claims are not cognizable in post-conviction proceedings. State v.Collins, Butler App. No. CA2001-09-214, 2002-Ohio-3729, at ¶ 8, citing State v. Murnahan (1992), 63 Ohio St.3d 60, 65.
 {¶ 41} In his fifth claim for relief, appellant argued that he was denied the right to a fair trial because, it is asserted, the prosecutor lied to the court that appellant had witnessed another defendant receive a three-year gun specification in a court proceeding; appellant asserted that the prosecutor offered this statement to the court in support of his argument regarding the admissibility of other-acts evidence.
 {¶ 42} By way of background, during appellant's testimony at trial, the prosecutor questioned appellant as to whether he became aware, in 1984, of a change in Ohio law concerning the use of a weapon during the commission of a crime. Appellant denied that he was aware of such a change in the law. Appellant also denied that he had been in a particular courtroom while another defendant was entering a guilty plea to a crime that had been committed with a handgun, and no objection was raised to this line of questioning.
 {¶ 43} The trial court correctly noted that this issue was not raised on appeal even though it was part of the record of proceedings. Accordingly, the trial court properly determined that appellant's fifth claim for relief was barred by res judicata.
 {¶ 44} In his seventh claim for relief,[1] appellant contended that the state's use of "similar act" testimony deprived him of due process of law. Appellant also argued that the trial court erred in failing to review evidence offered by defense counsel to show that the evidence at issue was not distinct in nature to the offense charged. In support, appellant cited to portions of the trial transcript.
 {¶ 45} As previously noted, the issue of "similar act" testimony was raised on direct appeal, and this court rejected appellant's challenge to its admission, holding that, "[t]he similar act testimony was sufficiently probative and a limiting instruction was given to the jury." Mayrides I, supra. The trial court properly dismissed this claim for relief as barred by the doctrine of res judicata.
 {¶ 46} Appellant's eighth claim for relief, in which he asserted the trial court should have suppressed the search of appellant's vehicle, was the subject of a pre-trial motion to suppress and a hearing, and this matter could have been raised on direct appeal. Appellant again argues that his trial counsel was ineffective in failing to pursue a tape-recording of appellant's interrogation by police which would disprove testimony by detectives that appellant cooperated and freely consented to the search of the vehicle; however, as previously noted, there is no supporting evidence that appellant's statements to detectives were tape-recorded. Accordingly, the trial court properly dismissed this claim for relief.
 {¶ 47} In his ninth claim for relief, appellant argued that the trial court erred in allowing the admission of three different mug shots of appellant at trial. This issue could have been raised as error on direct appeal, and the trial court properly found that the claim was barred by res judicata.
 {¶ 48} Having considered each of appellant's various claims for relief, and finding no substantive grounds for relief, we conclude that the trial court did not abuse its discretion in dismissing the petition without a hearing.
 {¶ 49} Finally, we find no merit to appellant's contention that the trial court failed to issue sufficient findings of fact and conclusions of law in its judgment entry. Pursuant to R.C.2953.21(C), if a trial court dismisses a petition, "it shall make and file findings of fact and conclusions of law with respect to such dismissal." The Ohio Supreme Court has held that a trial court properly denies a petition for post-conviction relief, and issues proper findings of fact and conclusions of law as required by R.C. 2953.21, "where such findings are comprehensive and pertinent to the issues presented, where the findings demonstrate the basis for the decision by the trial court, and where the findings are supported by the evidence." State v. Calhoun
(1999), 86 Ohio St.3d 279, 292. In the present case, the trial court issued a 26-page judgment entry in which it thoroughly discussed all of the issues raised by appellant, and the court's findings of fact were sufficient to satisfy the requirements of R.C. 2953.21(C).
 {¶ 50} Based upon the foregoing, appellant's single assignment of error is overruled and the judgment of the Franklin County Court of Common Pleas, dismissing appellant's petition, is hereby affirmed.
Judgment affirmed.
Bryant and Sadler, JJ., concur.
[1] In his appellate brief, appellant does not challenge the trial court's disposition of appellant's sixth claim for relief. The trial court dismissed that claim on the basis that the issues raised had been also raised on direct appeal. While not raised as error on appeal, we note our agreement with the trial court's determination.